IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ROBERT GARVIN, )
)
Plaintiff, )
)
 )  Civil Action No. 25-1803
v. )  Judge Nora Barry Fischer
)
MASONIC VILLAGE AT SEWICKLEY, )
 )  Docket No. 18
Defendant. )
)
)

## MEMORANDUM ORDER

AND NOW, this 8th day of April, 2026, upon consideration of the above-named Defendant's Motion to Dismiss, (Docket No. 18), its Brief in Support (Docket No. 20), Plaintiff Robert Garvin's Brief in Opposition (Docket No. 24), and Defendant's Reply (Docket No. 25); and after evaluating the allegations in Plaintiff's Amended Complaint (Docket No. 16) in light of the prevailing standards governing Rule 12(b)(6) motions to dismiss, pursuant to which the Court must accept all of the well-pled factual allegations as true, and resolve all inferences in favor of Plaintiff, *see, e.g.*, *United States ex rel. Bookwalter v. UPMC*, 946 F.3d 162, 168 (3d Cir. 2019) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2009)):[1]

---

[1] *See also Martinez v. UPMC Susquehanna*, 986 F.3d 261, 265 (3d Cir. 2021) (To survive a motion to dismiss under Rule 12(b)(6), the complaint "must contain enough facts to state a claim to relief that is plausible on its face") (quoting *Bell Atl. Corp v. Twombly*, 550 U.S. 544 (2009). Plausibility exists somewhere between "possible" and "probable." The former necessitates factual allegations that are "more than merely consistent with a defendant's liability." *Id*. (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). But the latter only demands that the court be able "to draw the reasonable inference that the defendant is liable for the misconduct alleged*." Iqbal*, 556 U.S. at 678 (citations omitted).

While detailed allegations are not necessary to survive a Rule 12(b)(6) motion to dismiss, the complaint must contain "more than labels and conclusions" or "an unadorned, the-defendant-unlawfully-harmed-me accusation*."

IT IS HEREBY ORDERED that Defendants' Motion to Dismiss [18] is DENIED, without prejudice, for the reasons set forth below.

## I.        Factual and Procedural History

This action was brought by Plaintiff in November 2025 - under the Americans with Disabilities Act ("ADA"), as amended, 42 U.S.C. §12101 *et seq*., and parallel provisions of the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. §951 *et. seq*. - on the basis of (a) associational disability discrimination, (b) retaliatory suspension/termination, and (c) hostile work environment.  (Docket No. 1).  In response to Defendant's January 2026 Motion to Dismiss, Plaintiff filed an Amended Complaint that withdrew his claim/count of hostile work environment. (Docket No. 12-13, 16).[2]  Plaintiff avers in relevant part that:

He was employed by Defendant – a retirement/personal nursing and memory care residential facility - from June 2017 (at age 62) until his termination in September 2024, first as a driver and then as a reception screener/security guard whose responsibilities included screening visitors and preventing elopement from the premises by memory care residents.  His duties did not include directly assisting residents appearing in need of/requesting care, for which Defendant's express policy was that a caregiver be immediately summoned.  Plaintiff attained the highest annual ratings achievable, had no disciplinary actions/performance issues, and lived with his spouse, Robin Kusnirak-Garvin, in premises leased from Defendant.  Plaintiff's spouse was employed by Defendant as a Registered Nurse Supervisor from October 2022 until her termination

---

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citations omitted); *id.* at 213 (plaintiff need only put forth allegations that "raise a reasonable expectation that discovery will reveal evidence of the necessary element"). Similarly, Rule 8 intends that a defendant be provided fair notice of any claims and requires only a "short and plain statement" sufficient to raise a plausible claim. Fed. Rule Civ. Proc. 8.  *See generally, Bell Atl. Corp v. Twombly*, *supra.*

[2] *But see* Docket No. 20 at 7 (erroneously including reference to Count III).

in July 2023. At the time of her termination, Ms. Kusnirak-Garvin was receiving worker's compensation and remained on light duty due to a February 2023 work-related injury which included a broken right foot requiring surgery and extended care. Despite continued doctor's restrictions, she had been cautioned by Defendant that failure to return to full duty work soon would result in job loss. Plaintiff's spouse brought multiple actions against Defendant, including (1) a workers' compensation claim and (2) a January 2024 Charge before the EEOC (which was forwarded to the PHRC in April 2024 and Answered by Defendant in June 2024) and litigation before this Court seeking recovery under the ADA/PHRA for Defendant's alleged failure to accommodate and retaliatory termination.[3] Plaintiff and his spouse continued to reside on Defendant's campus during this time and Plaintiff supported both her continuing medical disability needs (including the need for further surgery) and her various actions against Defendant (such as by accompanying her to a mid-August 2024 IME by Defendant's medical expert, whose report was then provided to Defendant). Plaintiff was identified as a witness in her litigation, which was a matter of common knowledge on Defendant's campus.

On September 1, 2024, Plaintiff was on duty at reception when an elderly resident sat in the lobby for an interval and then appeared to be returning to her room. When Plaintiff left his station on hearing conversation in that hallway, he found her apparently unconscious on the floor against a wall, with no signs of immediate trauma and at no risk of additional injury, and with a nurse's aide having already been summoned. That being so, he continued to monitor both his entrance responsibilities and the arrival of the resident's EMS care. Plaintiff reported to his security department supervisor, Michael Wrbas, that another resident had raised a concern

---

[3] *See* Docket No. 16 at 7 n. 2 (claimant's spouse "had suffered a work injury on February 1, 2023, for which there was an ongoing workers' compensation case against the Defendant. She also filed a Complaint in the Court of Common Pleas of Allegheny County, Pennsylvania, (Case No. GD24-000225), and a Complaint in the Western District of Pa. against the Defendant (Case No. 2:25-cv-00548).").

regarding the timeliness of nursing staff arrival, and asked if he might check the security camera tape to verify timeframes.  Mr. Wrbas approved, and asked Plaintiff to write a report, which he did.  On September 4th, Mr. Wrbas replied that (1) he had investigated/reviewed the tape and found the response times for both the nursing staff and ambulance to be reasonable and (2) Plaintiff would be compensated for his time to complete the report, for which he was thanked. (Docket No. 16-2).  On September 6th, Plaintiff was notified by his HR Director that he was being suspended pending investigation, and on September 11th he received a termination letter stating that he had violated policies, including "inconsistent treatment of residents" and "dishonesty".[4]  Despite Defendant's policies/practices to the contrary, Plaintiff was provided no opportunity to respond to these allegations, nor was he provided any factual details supporting them.  The termination letter also gave Plaintiff thirty (30) days' notice to vacate the Garvins' leased home, as neither remained employed by Defendant.

*See generally*, Docket Nos. 16 and 24.

In bringing claims for associational disability discrimination (Count I) and retaliation (Count II) in violation of the ADA/PHRA, Plaintiff further avers that:

(1)  Defendant was aware that Plaintiff's wife is/was a disabled individual with an ongoing work-sustained injury, entitled to worker's compensation, and requiring accommodation(s). Defendant "expressed frustration towards [her] use of medical leave, requested accommodations and filing complaints" and discriminated against her.  Plaintiff was visibly/actively supporting his spouse's disability and related rights.  The Garvins remained in employment-linked housing and thus Defendant's campus community continued to be aware of Ms. Kusnirak-Garvin's work-related injury/disability and termination, which were "ongoing and actively in litigation."

---

[4] *But see* Docket No. 25 at 8, n. 3 (noting that this is "misstated" as the reason was "inconsiderate" treatment).

Defendants "very clearly wanted the [Garvins] off their property" for "reasons directly related to her disability" and staff/resident awareness of the Garvins' "struggles with her condition." Terminating Plaintiff and their lease would accomplish this. In claiming associational discrimination, Plaintiff avers that he was thusly "singled out" for termination. *See* Docket No. 24 at 10-12; Docket No. 16.

(2) Plaintiff and his spouse "advised and discussed" her medical conditions, need for accommodations, "and rights to be free of discrimination on multiple occasions with the Defendant, which constituted protected activity" under the ADA/PHRA, and both Plaintiff and (thereby) the Garvins' lease were terminated for his "opposition to discriminatory conduct against his wife" (Docket No. 16 at ¶¶ 99, 66). In addition, Plaintiff supported his spouse in her claim for workers' compensation benefits for medical treatment and disability and ongoing litigation against Defendant through the EEOC and to Federal Court, in which he was "clearly listed [as] a witness" and which was more generally (a) "well known to those at the facility, as multiple individuals were involved" and (b) a continuing source of inquiry and concern on campus. Plaintiff avers that the aforesaid terminations were made in retaliation "for his support [of] and participation in . . . his wife's legal action(s) against the Defendant" seeking recovery for Defendant's disability discrimination against her. (*Id.* at ¶¶ 44, 47, 55-57, 100-01).

(3) Plaintiff also avers that Defendant's stated ground for termination was pretextual, and points to (a) the timing of his discharge in relation to his spouse's continuing workers' compensation and advancing ADA/PHRA claims, (b) his own adherence to proper procedures and the absence of any suggestion of concern as to his conduct by Supervisor Wrbas in their interactions between September 1st and 4th, (c) the lack of foundational details/support for the cause(s) of termination given, and (d) Defendant's breach of its own policies/procedures in failing

5

to provide Defendant any meeting/hearing or other opportunity to address the "vague, contrived, and inconsistent with any written policy" allegations made against him.

### II. Plaintiff States a Claim Under Both Counts of His Amended Complaint

Defendant contends that Plaintiff's claim for association discrimination fails for want of "any allegations that plausibly suggest" that his termination "was motivated by his wife's alleged disability or 'unfounded stereotypes' regarding the same". (Docket No. 20 at 7, 12).  It further alleges that his claim of retaliation fails as Plaintiff avers no protected conduct and has pled no "plausible causal connection" between his alleged conduct and termination.  (*Id.* at 7, 17-18, 23). The Court finds, however, that Plaintiff has pled sufficient facts in his Amended Complaint to withstand the motion to dismiss as to both his asserted claims.

First, regarding Count I, Plaintiff's claim of associational disability discrimination: As Defendant notes, the ADA prohibits "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association." (Docket No. 20 at 13).  But Defendant's rebuttal of its own suggestion - that Plaintiff's claim is premised on alleged adverse action in unlawful response to his need for time-off to support his wife's disability – misses the mark. (*Id*.) (citing *Erdman v. Nationwise Ins. Co.*, 582 F.2d 500, 510 (3d Cir. 2009) ("[T]here is a material distinction between firing an employee because of a relative's disability and firing an employee because of the need to take time off to care for the relative.).  To the contrary and as summarized above, read in the light most favorable to Plaintiff, the Complaint adequately alleges facts that plausibly suggest ("raise a reasonable inference") that his spouse's disability and Defendant's alleged aversion/animus towards it (and its continued overt presence on Defendant's campus) were a determining factor in his termination.  More plainly, Defendant held animosity toward Ms.

Kusnirak-Garvin on account of her continuing work-related disability and desired to remove what it perceived to be the unfavorable distraction/reminder she and that disability presented to its residential care community. (Docket No. 16 at ¶¶ 56-57, 88-91). *See* 42 U.S.C. § 12112(b); *cf.* Docket No. 25 at 2-3. He has thus met the applicable standard at this juncture.

Second, regarding Count II, Plaintiff's claim of retaliation for opposition to an unlawful employment practice or participation in a related investigation/litigation: The ADA expressly prohibits an employer from discriminating or retaliating against an employee for opposing any unlawful practice or for making a charge, testifying, assisting or participating in any manner in a related investigation, proceeding or hearing. *See* 42 U.S.C. §12203(a). *See also* PHRA, 43 Pa. Stat. §955(e); Docket No. 24 at 13; Docket No. 20 at 17-18 ("Courts have recognized two distinct types of activities under a theory of unlawful retaliation: 'opposition' activity and 'participation' activity") (citing *Robinson v. Southeastern Pa. Transp. Auth.*, 982 F.2d 892, 896 n. 4 (3d Cir. 1993)).

While highlighted in his pleading, Plaintiff's provision of marital/domestic support to his disabled spouse in the form of transportation, mobility assistance and other physical/medical care, even when provided in connection with a spouse's attendance at an IME, does not constitute "opposing" Defendant's alleged discrimination against Ms. Kusnirak-Garvin under any law cited by Plaintiff or of which the Court is presently aware.[5] Plaintiff's averment that he, as well as his spouse, directly raised objections to Defendant's imposition of such alleged discrimination on Ms. Kusnirak-Garvin (in the form of, *e.g.*, denial of accommodations and retaliatory termination), does, however, under the currently applicable standard, suffice to plausibly allege his "opposing" (*e.g.* "resisting" or "contending" against) an unlawful practice. *See e.g.*, *Crawford v. Metro. Gov't of*

---

[5] *Cf.* Docket No. 24; *supra* at 3. *Cf. also* Docket No. 20 at 25.

*Nashville & Davidson County*, 555 U.S. 271, 276 (2009); *Moore v. City of Philadelphia*, 461 F.3d 331, 342 (3d Cir. 2006) (noting that opposition to discrimination can take the form of "informal protests of discriminatory employment practices, including making complaints to management"). *Cf.* Docket No. 25 at 4 (asserting that discussion about her "rights to be free of discrimination" during his wife's employment was not protected conduct).

Moreover, Plaintiff's allegations that he was participating in "support" of his spouse's employment actions/litigation, including expressly as a named witness, meet the alternative provision of §12203(a) prohibiting discrimination/retaliation for participation in support of another's employment discrimination claim.[6] Finally, as set forth in the pleadings and summarized above, Plaintiff has sufficiently alleged, under the currently applicable standard, both temporal proximity and other facts sufficient to raise an alternative inference of causation, *e.g.*, Defendant's ongoing antagonism toward his spouse's successfully advancing actions/litigation against Defendant and Plaintiff's continuing participation therein. *See Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280-81 (3d Cir. 2000) (noting that "[a]lthough timing and ongoing antagonism have often been the basis for the causal link," plaintiffs may substantiate a causal connection through other circumstantial evidence); *Daniels v. Sch. Dist. of Philadelphia*, 776 F.3d 181, 196 (3d Cir. 2015) ("In the absence of such a close temporal proximity, we consider the circumstances as a whole, including any intervening antagonism by the employer, inconsistencies in the reasons the employer gives for its adverse action, and any other evidence suggesting that the employer had a

---

[6] The Court finds Defendant's citation to the District Court of Delaware's decision in *Lehman* distinguishable under the facts of the case *sub judice*. *Cf.* Docket No. 20 at 20 (citing *Lehman v. Aramark Healthcare Support Services, LLC*, 630 F.Supp.2d 388 (D. Del., 2009) (holding that employee merely listed as a potential witness in a coworker's initial disclosures/interrogatory answers had not, without more (*e.g.*, an affirmative expression of intent to participate in coworker's lawsuit prior to his own termination), failed to allege protected activity)); *id.* at 21 n. 7 (further noting that the *Lehman* "court explained that the plaintiff merely alleged that he would testify truthfully in connection with his coworker's suit – not that he unequivocally opposed certain practices of the defendant"). More generally, Defendant's characterization of Plaintiff as an "idle participant" is a contradiction of terms. Docket No. 20 at 22. *Cf.* Docket No. 25 at 6.

retaliatory animus when taking the adverse action.).  *Cf.* Docket No. 24 at 23-24; Docket No. 25 at 6-8.

This being said, the Court observes that Plaintiff's Amended Complaint, while sufficient, could certainly have been more so, and emphasizes the current posture of this action and its applicable standard.  The Court expects these matters will benefit from the development of a more fulsome record should the case proceed through the discovery process.  *See, e.g.*, *Frankovich v. Pittsburgh Pub. Schs.*, Civ. A. No. 19-1643, 2020 WL 12674627, at *1 (W.D. Pa. May 6, 2020).


Accordingly, Defendant's Motion to Dismiss [18] is DENIED, without prejudice.

IT IS FURTHER ORDERED that Defendant shall file its Answer by **April 22, 2026**.


 *s/Nora Barry Fischer*
Nora Barry Fischer
Senior U.S. District Judge

cc/ecf: counsel of record

9